UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACOB FAY LUKE, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1617** |
| **SHERIFF JERRY LARPENTER, ET AL.** | **SECTION: "I"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Jacob Fay Luke, Sr., a state pretrial detainee, filed this federal civil action pursuant to 42 U.S.C. § 1983. He sued Judge David Arceneaux, Sheriff Jerry Larpenter, Major Stephen Bergeron, Dr. Richard Haydel, and Richard Neal, an EMT. Plaintiff's claims arise from the fact that he was exposed to – and ultimately contracted – COVID-19 at the Terrebonne Parish Jail.

Plaintiff filed this federal civil action *in forma pauperis*.[1] Concerning such actions, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)  is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

---

[1] Rec. Docs. 2 and 4.

In addition, because he is incarcerated, plaintiff is also subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[2] Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Pursuant to its screening authority, the Court obtained certified copies of plaintiff's jail medical records, and, at the Court's direction, copies were also provided to plaintiff for his use in this proceeding.[3]

Based on plaintiff's allegations, the applicable law, and those medical records, the undersigned United States Magistrate Judge recommends that, for the following reasons, the claims in this lawsuit be dismissed as frivolous and/or for failing to state a claim upon which relief may be granted.

---

[2] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

[3] The Court's copy of the medical records has been entered into this federal record at Rec. Doc. 6. Herein, the citations to the medical records reference the Bates-stamped page numbers appearing on the records.

2

**Claim Against Judge David Arceneaux**

Plaintiff states his claim against Judge David Arceneaux as follows:

(Judge David Arceneaux) first denied my writ of Habeas Corpus, motions under under A. 28 U.S.C. § 2241 Jurisdiction, after i filed Two Pro Se. Applying writ of Habeas Corpus Exaulting all my Administrative Remedy of Covid-19 on 4/16/20 and on 4/21/20 Judge David Arceneaux "Faced/Denied," my motions without a hearing or a full answer for my "Temporary Release on Bail" and "Reconnaize Bond," both due to the Covid-19 Global pandemic under 18 U.S.C. § 3142(i) now violating my Fifth Amendment, Eighth Amendment, and Sixth Amendment, cause can't prepare for defense for Trial and I Exaulted all my Remedy before 4/29/20 day "Testing Positive" for Covid-19 now putting my life at risk for death: and a PreTrial detainee.[4]

Judge Arceneaux sits in the Thirty-Second Judicial District Court for Terrebonne Parish, Louisiana, and, as a state court judge, he enjoys absolute judicial immunity. Accordingly, no relief is available to plaintiff with respect to the foregoing claim under 42 U.S.C. § 1983.

The breadth of judicial immunity was thoroughly explained by former United States Judge Joseph C. Wilkinson in a Report and Recommendation subsequently adopted by United States District Judge Lance M. Africk as follows:

> For more than one hundred years, judges have been held immune from liability for judicial acts done within their jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citing Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871)); Mays v. Sudderth, 97 F.3d 107, 110 (5th Cir. 1996). "A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any acts performed in [his or her] judicial role." Ammons v. Baldwin, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); accord Mays, 97 F.3d at 110-11. This judicial immunity applies even if a judge is accused of acting maliciously or corruptly. Stump, 435 U.S. at 356-57; Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), as recognized by Hill v. Shelander, 992 F.2d 714, 716 (7th Cir. 1993); Mays, 97 F.3d at 110-11. Judicial officers are absolutely immune from liability for damages unless they are without jurisdiction. Id. at 111; Dayse v. Schuldt, 894 F.2d 170, 172 (5th Cir. 1990); Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988).

---

[4] Rec. Doc. 1, p. 6. All quotations from the complaint in this opinion are verbatim with no alterations or corrections.

> In the past, however, judicial officers did not enjoy absolute immunity from suits seeking injunctive relief. Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity. Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). However, the Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983.
>   The FCIA therefore statutorily overruled Pulliam's holding regarding the availability of injunctive relief against a state judge in his official capacity. Guerin v. Higgins, No. 00-0244, 2001 WL 363486, at *1 (2d Cir. 2001) (unpublished); Nollet v. Justices, 83 F.Supp.2d 204, 210 (D. Mass. 2000); see also Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (1996 amendment to Section 1983 limits the relief available against a federal judge to declaratory relief). Thus, neither injunctive relief nor damages are available in this Section 1983 action against [a state judicial officer]. Tesmer v. Granholm, 114 F.Supp.2d 603, 618 (E.D. Mich. 2000); Nollet, 83 F.Supp.2d at 210.
>   Furthermore, to whatever extent, if any, that [a plaintiff] seeks an order … directing the judge to take action concerning [the] plaintiff's state court proceedings, a federal court has no power to direct a state court or its judicial officers in the performance of their duties when mandamus is the only relief sought. In re Campbell, 264 F.3d 730, 731 (7th Cir. 2001); Santee v. Quinlan, C.A. No. 96-3417, Record Doc. Nos. 3, 7, 8 (Nov. 5 & 27, 1996) (Duval, J.), aff'd, 115 F.3d 355, 356-57 (5th Cir. 1997); Russell v. Knight, 488 F.2d 96, 97 (5th Cir. 1973); Moye v. Clerk, 474 F.2d 1275, 1276 (5th Cir. 1973); Lamar v. 118th Judicial Dist. Court, 440 F.2d 383, 384 (5th Cir. 1971); White v. Stricklin, No. 3:02-CV-688-D, 2002 WL 1125747, at *2 (N.D. Tex. May 23, 2002); Norman v. Louisiana S.Ct., No. 01-2225, 2001 WL 881298, at *1 (E.D. La. Aug. 3, 2001) (Duval, J.). [A federal] court is without authority to order officials of the state court having jurisdiction over [a] plaintiff's criminal case to treat his claims in any particular way or to otherwise interfere with the rulings of its judges.

Hood v. Commissioner Foil, Civ. Action No. 15-5853, 2013 WL 6174614, at *3 (E.D. La. Nov. 21, 2013); accord Gemelli v. Louisiana, Civ. Action No. 19-13424, 2020 WL 3317033, at *6-7 (E.D. La. Apr. 29, 2020), adopted, 2020 WL 3297079 (E.D. La. June 18, 2020).

Because plaintiff's claim against Judge Arceneaux concerns actions taken within the scope of his role as a state judicial officer, the doctrine of absolute judicial immunity bars the claim. As such, it "must be dismissed as legally frivolous or for failure to state a claim for which relief can

4

be granted, all because [the] defendant is immune.  28 U.S.C. §§ 1915(e)(2)(iii) and 1915A(b)(2)."

Hood, 2013 WL 6174614, at *4.

### Claims Against Sheriff Jerry Larpenter and Major Stephen Bergeron

Plaintiff states his claims against Sheriff Jerry Larpenter and Major Stephen Bergeron as follows:

> (Sheriff Jerry Larpenter) have been aware of the outbreak of Covid-19 virus inside their facility and the health risks pursuant to this deadly disease and have negligently disregarded my pleas for help and my respectful requests for asistance in avoiding contracting this disease, by either emergency release or similar relief and consequently i have "Tested Positive" for Covid-19 virus putting my life at risk for death.
> (Major Stephen Bergeron) have been aware of the outbreak of Covid-19 virus inside their facility and the health risks pursuant to this deadly disease and have negligently disregarded my pleas for help and my respectful requests for asistance in avoiding contracting this disease, by either emergency release or similar relief and consequently i have "Tested Positive" for Covid-19 virus.[5]

In assessing whether the foregoing allegations suffice to state a claim upon which relief may be granted, the Court must be mindful of the following principles.

First, as the United States Supreme Court has explained:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." … [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *A pleading that offers labels and conclusions* or a formulaic recitation of the elements of a cause of action *will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.*

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (emphasis added; citations, quotation marks, and brackets omitted).

---

[5] Rec. Doc. 1, p. 6.

5

Second, as the Supreme Court further explained:

> [A] complaint must contain *sufficient factual matter*, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. at 678 (citations and quotation marks omitted); accord Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (footnote and citations omitted)). The Supreme Court continued:

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … *[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.*
> … *While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 678-79 (emphasis added; citations, quotation marks, and brackets omitted).

Plaintiff's claims against Sheriff Larpenter and Major Bergeron, liberally construed,[6] are ones that those defendants failed to protect him from harm, namely from being infected with COVID-19. Clearly, pursuant to the Fourteenth Amendment, penal officials have a duty to provide a pretrial detainee in their custody "with basic human needs, including … protection from harm

---

[6] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

6

protection from harm, during [his] confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). That said, those officials "are expected to provide only reasonable, not absolute, safety." Williams v. Gusman, Civ. Action No. 15-96, 2015 WL 5970424, at *8 (E.D. La. Oct. 14, 2015) (quotation marks omitted).

Therefore:

> To establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Accordingly, "[a]ctual knowledge and appreciation of the risk are required." Smith v. Jaramillo, 394 F. App'x 183, 185 (5th Cir. 2010). Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

As an initial matter, the Court notes that plaintiff alleges that Sheriff Larpenter and Major Bergeron acted "negligently." However, even if that is true, mere negligence will not suffice to support a § 1983 claim. As the United States Supreme Court has explained: "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." Baker v. McCollan, 443 U.S. 137, 146 (1979).

Further, in any event, even if plaintiff were alleging that Sheriff Larpenter and Major Bergeron acted with the deliberate indifference required for a federal claim, his claims are still

deficient because they do not allege sufficient supporting *facts*. The only real "fact" he alleges is that the defendants denied him "emergency release or similar relief." However, even if the Court assumes that the defendants had it within their authority to either grant or attempt to secure plaintiff a COVID-related release from custody, their failure to do so is not necessarily indicative of deliberate indifference. Although the pandemic requires that penal officials take measures to curb the spread of infections within their facilities, it does not serve as wholesale "get out of jail free card" for everyone who has been charged with and is detained for crimes. Therefore, the unadorned allegation that plaintiff was not released is insufficient for the Court "to infer more than the *mere possibility* of misconduct," and, accordingly, is insufficient to state a "*plausible* claim for relief." Iqbal, 556 U.S. at 679 (emphasis added).

As to the further allegation that the defendants did not offer plaintiff "similar relief," the Court simply has no idea – and plaintiff certainly has not identified – to what type of relief he is referring. Where, as here, a plaintiff has not specifically identified *what* he was purportedly denied, a court has no basis for concluding that the denial was inappropriate, much less that it violated the plaintiff's constitutional rights.

For all of these reasons, plaintiff has failed to comply with the minimal pleading requirements to state cognizable, nonfrivolous claims against Sheriff Larpenter and Major Bergeron.

### C. Dr. Richard Haydel and Richard Neal

Plaintiff states his claims against Dr. Richard Haydel and Richard Neal as follows:

> (Doctor Richard Haydel, M.D.) are responsible for the medical negligence in this facility because when Covid-19 first occured medical didn't have staff wearing mask, and propre PPE also letting new inmates inside the facility and in which we do not have access to the neccassary facilities to combat this deadly

> Covid-19 continually disregarding my medical needs by responding only with blood pressure checks and Tylenol when i was reporting i couldn't breath and chest pains, clearly inadequate in reference to medical care over this facility at Terrebonne Parish Jail.
> (Doctor Richard Neal) M.D.) are responsible for the medical negligence in this facility because when Covid-19 first occured medical didn't have staff wearing mask, and propre PPE also letting new inmates inside the facility and in which we do not have access to the neccassary facilities to combat this deadly Covid-19 continually disregarding my medical needs by responding only with blood pressure checks and Tylenol when i was reporting i couldn't breath and had chest pains, clearly inadequate in reference to medical care over this facility at Terrebonne Parish Jail.[7]

The foregoing claims, liberally construed, are ones that Dr. Haydel and Neal both (1) failed to protect plaintiff from harm (with, again, that harm being infection with COVID-19) and (2) were deliberately indifferent to his serious medical needs once he in fact became infected.[8]

As to failure-to-protect components of plaintiff's claims against Dr. Haydel and Neal, they suffer from similar defects as exist with respect to foregoing claims against Sheriff Larpenter and Major Bergeron. For instance, the allegation that Dr. Haydel and Neal were "letting new inmates inside the facility" despite the pandemic is clearly insufficient to state a *plausible* claim. Even if the Court assumes that Dr. Haydel and Neal had the authority to unilaterally prevent Sheriff Larpenter from admitting new inmates into the jail he operates, a proposition which strikes the Court as unlikely, their failure to do so is, again, insufficient for the Court "to infer more than the *mere possibility* of misconduct." Iqbal, 556 U.S. at 679 (emphasis added). For example, there is no suggestion that the newly admitted inmates were known or suspected to be infected – or,

---

[7] Rec. Doc. 1, pp. 6-7. Although plaintiff refers to Neal in the complaint as a doctor, it is the Court's understanding that Neal is not in fact a physician. For example, in plaintiff's medical records, Neal refers to himself as an "EMT." See Rec. Doc. 6-1, p. HM000320. However, for the purposes of this decision, it is immaterial whether Neal is a licensed physician or simply another type of medical professional.
[8] To the extent that plaintiff is alleging that Dr. Haydel and Neal also acted negligently, that allegation is insufficient to state a cognizable federal claim for the reasons already explained *supra*.

alternatively, if they were, that inadequate measures were taken to prevent them from spreading the disease within the facility once admitted.  The fact that a jail continues to accept new inmates during a pandemic simply is not, in and of itself, enough for this Court to infer the existence of a plausible constitutional violation.

The allegation that the medical staff was purportedly not wearing masks or other personal protective equipment is admittedly closer to the line, but nevertheless still insufficient to nudge plaintiff's claims across it, especially given that he filed this federal complaint in **May of 2020**.  That is crucial when considering whether he has *plausibly* stated a constitutional violation.  For example, in a case arising out the Idaho State Correctional Center, a prisoner asserted a § 1983 claim predicated on an allegation that visitors, staff, and and inmates were not required to wear masks from **March to June of 2020**.  United States District Judge B. Lynn Winmill determined that allegation was insufficient to state a plausible failure-to-protect claim, noting:

> That prison officials did not require face masks for the first few months of the pandemic does not establish deliberate indifference.  What we know about COVID-19 and the spread of the novel coronavirus is constantly changing, as new information is released by medical researchers, agencies, and other authorities.  At first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus.  Of course, we now know that such masks do help reduce the risk of transmission.  But it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited.

Kesling v. Tewalt, Case No. 1:20-cv-00334, 2020 WL 4496495, at *6 (D. Idaho Aug. 4, 2020).[9]  The same is true in this case.  Therefore, again, the facts as alleged in the complaint are simply insufficient to state a *plausible* failure-to-protect claim.

---

[9] See also Mayfield v. Peissig, No. 20-cv-269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) ("[P]laintiff's general allegations about a lack of social distancing and inconsistent mask use at the prison do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant risk of harm to plaintiff's health or safety.").

As to the medical-care components of plaintiff's claims, it is clear that "[t]he Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (quotation marks omitted). However, even if plaintiff's infection rose to the level of a serious medical need,[10] it cannot be said that Dr. Haydel or Neal reacted to that need with deliberate indifference.[11]

Regarding the "deliberate indifference" that must be shown with respect to a medical claim, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, *the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.* Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (emphasis added; citations, quotation marks, and brackets omitted). "Actions and decisions by officials that

---

[10] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

[11] It is not clear from either plaintiff's allegations or his medical records to what extent, if any, Dr. Haydel and Neal (as opposed to other members of the jail medical staff) were *personally* involved in plaintiff's COVID-related medical care. If this claim were allowed to proceed, plaintiff would be required to show such personal involvement because that "is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In other words, the mere fact that Dr. Haydel and Neal hold supervisory positions in the jail's medical department is not alone enough to hold them liable under federal law. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Sanchez v. Young County, Texas, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations committed within the jail if they had no personal involvement."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). However, even if the Court simply assumes for the purposes of this decision that Dr. Haydel and Neal *were* personally involved in plaintiff's COVID-related medical care, the claims against them still fail for the reasons explained herein.

are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999).

The Fifth Circuit has further held that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is the case here. Regarding plaintiff's COVID-19 infection, his medical records show that he received the following medical attention:

| | |
|---|---|
| 4/5/2020 | Plaintiff submitted a Request for Medical Attention Form complaining of chest pains, breathing problems, and burning when coughing. He requested a COVID-19 test. He was examined, and, although there was some redness in his throat, his temperature was only 97.7°, and he had no other objective symptoms. Accordingly, it was determined that no treatment was necessary at that time.[12] |
| 4/25/2020 | Plaintiff submitted another Request for Medical Attention Form complaining of headaches, being lightheaded, a runny nose, body aches, cold sweats, a burning in his chest when coughing, trouble breathing, and the loss of his senses of smell and taste. He again asked for COVID-19 test. However, upon examination, his temperature was only 98.2° and there were no objective signs of distress. Therefore, he was given aspirin and instructed to notify the medical department if his symptoms worsened.[13] |
| 4/28-29/2020 | Plaintiff submitted another Request for Medical Attention Form complaining of a sore throat, high blood pressure, body aches, shortness of breath, loss of his senses of smell and taste, and chest pains. Although his temperature was only 98.0° and his oxygen saturation was 98%, he was nevertheless sent to the hospital emergency room for evaluation. At the emergency room, he was given a COVID-19 test which came back positive. At that point, his temperature was only 98.9° and his oxygen saturation was 97%. He was therefore discharged back to jail with instructions to return to the emergency room if his symptoms worsened. The emergency room physician, Dr. William Gregory, did not prescribe or recommend any medical treatment for plaintiff.[14] |
| 5/1/2020 | Plaintiff was brought to the jail medical unit complaining of chest tightness. His temperature was 98.6° and no wheezing or shortness of breath were |

---

[12] Rec. Doc. 6-1, p. HM000345.
[13] Id. at p. HM000343.
[14] Id. at p. HM000335-HM000342.

12

| | |
|---|---|
| | observed. However, he was placed in a medical observation cell for monitoring.[15] |
| 6/5/2020 | Plaintiff submitted another Request for Medical Attention Form complaining of chest pains, shortness of breath, headaches, loss of his sense of smell, body aches, coughing, and night sweats; he requested that he be retested for COVID-19.  After an examination, he was diagnosed with "cold symptoms," a small bump on his glands, and a "slightly red throat."  He was given a Z-pack and Sudafed.[16] |
| 6/12/2020 | Plaintiff submitted a Request for Medical Attention Form complaining of chest pains, shortness of breath, headaches, high blood pressure, body aches, and coughing, noting that he believed "[t]he Covid-19 is coming back."  He was examined in the medical department and it was noted that he would be referred for further evaluation.[17] |

The foregoing records show that plaintiff's medical requests were not ignored; rather, on each occasion he requested medical attention, he was promptly evaluated and, in some instances, either monitored or his symptoms were treated with over-the-counter medications.  Although he was not taken to the emergency room for COVID-19 testing when he *first* complained of *some* symptoms which were consistent with *(but not necessarily indicative of)* the virus, the Court has no basis for finding that such an action was constitutionally required, especially considering that the evaluations showed no little or no *objective* evidence of a COVID-19 infection.  Moreover, when his symptoms did not improve, he was then in fact taken to the emergency room.  Therefore, at worst, he experienced only a *delay* in being tested.  However, a delay in medical care rises to the level of a constitutional violation only if it resulted from deliberate indifference and caused the inmate "substantial harm."  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  Here, not only is plaintiff unable to show deliberate indifference, he certainly cannot show that the delay in

---

[15] Id. at p. HM000333.
[16] Id. at p. HM000327.
[17] Id. at p. HM000325.  Because the medical records were provided to this Court shortly thereafter, they do not reflect what further treatment plaintiff received, if any.

COVID-19 testing resulted in *any* harm, much less *substantial* harm, to him. Once he was tested and diagnosed with COVID-19, the emergency room doctor *prescribed no treatment*. Therefore, plaintiff cannot show that anything different would have occurred in his case or the eventual outcome of his infection even if he had been tested earlier.

For all of these reasons, plaintiff's medical claims against Dr. Haydel and Neal are frivolous.

**Motion for Release (Rec. Doc. 5)**

Lastly, the Court notes that plaintiff has filed a document entitled "Motion for Temporary Medical release or Lower Bond due to Covid-19 illness under 18 U.S.C. § 3142(i)." Rec. Doc. 5. For the following reasons, that motion should be denied.

First, plaintiff is in *state* custody. Therefore, the cited statutory provision, 18 U.S.C. § 3142(i), is inapplicable. See United States *ex rel.* Thomas v. New Jersey, 472 F.2d 735, 741 (3d Cir. 1973) ("The standards for release and for bail set forth in 18 U.S.C. §§ 3141-3152 … are irrelevant to the release by federal courts of state prisoners. They deal with federal criminal proceedings only. The only authority for the release by a federal court of a state prisoner is the habeas corpus statute ….").

Second, plaintiff filed this action as a federal civil rights action pursuant to 42 U.S.C. 1983. However, where an inmate desires COVID-related release, such relief must be sought in a habeas corpus action, *not* a federal civil rights action. See, e.g., VanDyke v. Louisiana Department of Corrections, Civ. Action No. 20-0448, 2020 WL 1869016, at *1 (W.D. La. Apr. 13, 2020).

Third, although this Court has the discretion to construe this action as a habeas corpus action in part, it should decline to do so because there is no indication that plaintiff has exhausted

his remedies in the state courts. See, e.g., Williams v. Texas, Civ. Action No. H-20-1352, 2020 WL 2061520, at *2 (S.D. Tex. Apr. 29, 2020) (declining to "re-characterize [plaintiff]'s civil rights complaint as a federal habeas corpus petition" because he had not "exhausted available state court remedies for purposes of seeking habeas review under 28 U.S.C. § 2241" with respect to his desire to be released on bond due to COVID-related concerns). That is critical, because an inmate is clearly required to exhaust his remedies in the state courts before seeking habeas corpus relief in federal court. See, e.g., Edge v. Stalder, 83 F. App'x 648 (5th Cir. 2003) (exhaustion of state remedies is required in habeas corpus actions brought pursuant to 28 U.S.C. § 2241); Dickerson v. Louisiana, 816 F.2d 220, 225 (5th Cir. 1987) (same); see also Crawford v. Gonzalez, Civ. Action No. 4:20-cv-1339, 2020 WL 4910560, at *2 (S.D. Tex. Aug. 17, 2020) (rejecting a state pretrial detainee's request for a COVID-related release, noting that he must give the state courts a fair opportunity to his upon the claim before seeking habeas relief it in federal court); Williams v. Texas, Civ. Action No. H-20-1352, 2020 WL 2061520, at *2 (S.D. Tex. Apr. 29, 2020).

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's *highest court* in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988). In Louisiana, the highest state court is the Louisiana Supreme Court. See La. Const. art. V, § 5(A). Plaintiff does not allege that he has exhausted his remedies in the Louisiana Supreme Court and no decisions from that court relating to plaintiff are reported in online legal databases.

For all of these reasons, plaintiff's motion for release, Rec. Doc. 5, should be denied.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's claim against Judge David Arceneaux be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim upon which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's failure-to-protect claims against Sheriff Jerry Larpenter and Major Stephen Bergeron be **DISMISSED WITHOUT PREJUDICE** for failing to state a claim upon which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's failure-to-protect claims against Dr. Richard Haydel and Richard Neal be **DISMISSED WITHOUT PREJUDICE** for failing to state a claim upon which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's medical claims against Dr. Richard Haydel and Richard Neal be **DISMISSED WITH PREJUDICE** as frivolous.

It is **FURTHER RECOMMENDED** that plaintiff's motion for release, Rec. Doc. 5, be denied.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). [18]

New Orleans, Louisiana, this twenty-third day of October, 2020.

 

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[18] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.